# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

GEORGE E. JACOBS, IV,

Plaintiff,

v.

CDCR, *et al.*,

Defendants.

Case No.  1:20-cv-00547-BAM (PC)

ORDER DIRECTING CLERK OF COURT TO RANDOMLY ASSIGN DISTRICT JUDGE TO ACTION

FINDINGS AND RECOMMENDATIONS TO DISMISS ACTION, WITH PREJUDICE, FOR FAILURE TO STATE A CLAIM, FAILURE TO OBEY COURT ORDER, AND FAILURE TO PROSECUTE

(ECF No. 21)

**FOURTEEN (14) DAY DEADLINE**

I.    **Background**

Plaintiff George E. Jacobs, IV ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action under 42 U.S.C. § 1983.  This matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.

On August 14, 2020, the Court issued a screening order granting Plaintiff leave to file a first amended complaint or a notice of voluntary dismissal within thirty (30) days.  (ECF No. 11.) The Court expressly warned Plaintiff that the failure to comply with the Court's order would result in a recommendation for dismissal of this action, with prejudice, for failure to obey a court order and for failure to state a claim.  (Id. at 24.)  Following a fifth extension of time, Plaintiff's

1

first amended complaint or notice of voluntary dismissal was due on or before March 22, 2021. (ECF No. 21.)  The deadline has expired, and Plaintiff has failed to file an amended complaint or otherwise communicate with the Court.

**II.     Failure to State a Claim**

      **A.     Screening Requirement**

      The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity and/or against an officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1), (2); 28 U.S.C. § 1915(e)(2)(B)(ii).

      A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences."  Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

      To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged.  Iqbal, 556 U.S. at 678 (quotation marks omitted); Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009).  The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard.  Iqbal, 556 U.S. at 678 (quotation marks omitted); Moss, 572 F.3d at 969.

      **B.     Plaintiff's Allegations**

      Plaintiff is currently housed at the California Substance Abuse Treatment Facility ("CSATF") in Corcoran, California.  The events in the complaint are alleged to have occurred at both CSATF and at California State Prison, Corcoran ("CSP-Corcoran") in Corcoran, California.

1   Plaintiff names the following defendants in their individual and official capacities: (1) California

2   Department of Corrections and Rehabilitation ("CDCR"); (2) CSP-Corcoran; (3) CSATF;

3   (4) Reasonable Accommodation Panel members at CSP-Corcoran: D. Overley, D. Goree, U.

4   Williams, M. Miguel, C. McCabe, S. Hernandez, Dentinger, M. Gamboa, M. Oliveira, S. Russell,

5   and B. Adams; (5) Reasonable Accommodation Panel members at CSATF: P. Brightwell, J.

6   Zamora, A. Enemoh, T. Ordonez, V. Hernandez and S. Whiting; and (6) CSATF custody officers:

7   B. Clegg, M. Lefner, H. Garcia, Helmuth, K. Paulo, Menhenez (Jimenez), E. Sanchez, A.

8   Arreazola, C. Livingston, D. Stohl, and T. Ibbs.

9          <u>CSP-Corcoran Allegations</u>

10         On November 26, 2015, Plaintiff filed for Americans with Disabilities Act ("ADA")

11   accommodations due to a disabled right arm, wrist and fingers that prevented him from writing

12   letters, bathing, balancing and dressing. Plaintiff claims that while he qualified under the ADA,

13   Defendants Overley, Goree, Williams, Miguel, McCabe, Hernandez and Dentinger denied

14   Plaintiff his reasonable accommodations.

15         On March 29, 2016, Plaintiff filed for ADA accommodations due to his disabled right arm

16   and hand that prevented him from engaging in major life activities.  Although Plaintiff qualified

17   under the ADA, Defendants Gamboa, Oliveira, Russell, Miguel, McCabe and Adam denied

18   Plaintiff his right to reasonable accommodations.

19         On May 3, 2016, Plaintiff filed for ADA accommodations to California Correctional

20   Health Care Services based on his same disability. Although he qualified, Defendant McCabe

21   only partially granted the request, placing the burden on correctional officers to provide Plaintiff

22   with ADA accommodations.

23         On July 11, 2016, Defendant McCabe retracted the partially granted status and informed

24   Plaintiff that because he had been transferred to another institution—CSATF—they could no

25   longer provide treatment.

26         On May 5, 2016, Plaintiff filed another reasonable accommodation request for his

27   disability. Plaintiff stated that he had no ADA access to the shower and was being denied his right

28   to shower. Defendant S. Hernandez reportedly told the guards that they did not have to give

3

Plaintiff a reasonable accommodation to the ADA shower because Plaintiff was not ADA. The guards began denying Plaintiff access to the ADA shower, which led to Plaintiff living in unsanitary conditions and hygiene.

On May 19, 2016, Defendants Gamboa, Oliveira, Miguel, McCabe, and Adam denied Plaintiff's request and informed Plaintiff to work with medical staff with addressing his medical concerns.

On May 26, 2019, Plaintiff filed another ADA request to custody based on his need to access the law library and to have someone help by writing for him. Custody refused to reply to the 602 complaint and Plaintiff was denied access to the prison law library and resources.

On the same day, Plaintiff filed an additional healthcare complaint due to CDCR and/or its designees allegedly falsifying Plaintiff's records out of retaliation and to conspire against him to deny him reasonable accommodations. Plaintiff alleges that his medical records and status were mysteriously downgraded from a high-risk medical condition to a medium risk. When Plaintiff inquired as to how his status was changed without a reevaluation by his primary care provider, medical staff could not explain this occurrence. Plaintiff asserts that medical status can only be changed by an authorized physician. Plaintiff reportedly requested that an internal affairs investigation be conducted to find out who generated and falsified his medical documents. CDCR denied Plaintiff's request.

On June 13, 2016, Plaintiff filed another ADA accommodation request due to his disabled arm. Although he qualified, Defendants Gamboa, Oliveira, Williams, Hernandez and McCabe denied Plaintiff the right to reasonable accommodations.

<u>CSATF Allegations</u>

On June 24, 2016, as a result of CSP-Corcoran's denial of his ADA accommodations and the alleged falsification of his medical records changing his status to medium risk, CDCR or its designee moved Plaintiff to a 180-design maximum security level 4 general population prison—CSATF.

On August 27, 2016, Plaintiff filed another ADA accommodation request due to his disability. Although he qualified, Defendants Brightwell, Zamora, Enemoh, Ordonez, Hernandez

and Whiting denied Plaintiff reasonable accommodations. Defendants acknowledged in writing that Plaintiff needed assistance in writing and showering, but they denied him reasonable accommodations.

On September 12, 2016, Plaintiff refiled his medical grievance regarding the allegedly false medical document changing his status. On February 21, 2017, medical staff informed Plaintiff that the documentation in question was no longer in his medical file. Plaintiff claims that it mysteriously disappeared.

On October 1, 2016, due to the failure to properly medically house Plaintiff, CSATF forced Plaintiff to be housed in a cell on the upper top bunk bed. Plaintiff explained to CSATF correctional staff that he could not be housed on the upper bunk bed due to his disability, which they could see. Plaintiff also showed them his lower bunk medical chrono, which they disregarded.

Plaintiff alleges that CDCR has a policy in place that if an inmate refuses a housing assignment for any reason, then the inmate will be penalized and punished with disciplinary sanctions. Plaintiff was advised of the policy that if he refused the housing assignment for any reason, he would be penalized and punished. As a result of being forced to adhere to the policy and his assignment to the top bunk, Plaintiff injured his left hand and wrist when he fell off of the top bunk. He reportedly sustained this injury while breaking the fall and protecting his disabled right arm from further injury. Plaintiff was sent to an outside hospital for treatment.

On October 18, 2016, Plaintiff again filed for an ADA reasonable accommodation based on his disability and his injury. Plaintiff asserts that he was disabled in both his left and right hands and wrists. CSATF and California Healthcare Services denied Plaintiff's ADA accommodation requests, but they did acknowledge that Plaintiff was improperly housed at CSATF due to his medical classification. They reportedly stated that "it was 'beyond' the medical information provided." (ECF No. 1 at 15.) CSATF and California Healthcare Services provided Plaintiff with no reasonable accommodations. Plaintiff alleges that he is still being denied showers and/or reasonable accommodation access to the ADA shower facilities.

///

Plaintiff also alleges that he has never been provided with any writing assistance by CDCR, CSP-Corcoran or CSATF. Plaintiff has had to defend himself by paying other inmates commissary to help him write letters, legal briefs and forms. Plaintiff has had to struggle to write with his left hand. Plaintiff claims that he even pays for physical protection with commissary because he can no longer defend himself from physical harm and attacks.

On January 31, 2019, as a result of Defendants' alleged failure to properly house Plaintiff, denials of his right to reasonable accommodations and the refusals to acknowledge the deteriorating conditions of CSATF's prison cells, Plaintiff injured himself by slipping and falling in polluted rainwater that flooded the cell floor. Plaintiff contends that he awoke to use the restroom and stepped into puddles of contaminated rainwater leaking from cracks in the walls and cement floor. The water pooled under Plaintiff's bed, the cell walkway and into the corners. Plaintiff attempted to pull his personal property from under the bed. His property was sitting in contaminated rainwater. When Plaintiff grabbed his bag containing personal property and pulled it from under the bed, he slipped, lost his footing in the water and fell backwards. His back crashed into shelving cabinets before he hit the ground. Plaintiff was trying to protect his right arm from the fall. The shelving cabinets cut into Plaintiff's back and ribs. A gash appeared on his back and Plaintiff was sent to the emergency clinic, but CSATF failed to provide medical treatment. He was given a medical from to fill out and was told that he would be called for treatment when the form was processed. Plaintiff returned to his cell in pain and with his back still bleeding. Plaintiff alleges that he has had back issues since the fall, constant pain and therapy to relieve the hurt in his back. Plaintiff asserts that defendants were well aware of the condition in the cell with leaking contaminated water. Defendants were placed on notice numerous times by Plaintiff, his cellmate, the facility Inmate Advisory Committee members and the Prison Law Office.

Plaintiff further asserts that the conditions inside the cell prior to the fall caused him to have sores inside his nose, blisters, rashes and scabs on his skin and body. Plaintiff contends that these ailments were created by the water contamination, mold, asbestos, rats and bat droppings—fecal matter inside the cell and air ventilation system. According to Plaintiff, the contaminated

rainwater pushed the feces, mold and asbestos inside the cracks and walls of the cell. The prison has been condemned for years, but CDCR officials continue to house prisoners in harmful, dangerous and deplorable prison conditions.

On September 13, 2019, Plaintiff filed another request for ADA accommodations. Defendants Brightwell, Zamora, Enemoh, Ordonez, Hernandez and Whiting denied Plaintiff reasonable accommodations.

Retaliation Allegations

Plaintiff alleges that Defendants retaliated against him for exercising his right to file ADA prison grievances. On September 2, 2016, Defendant Thomas authored an allegedly false CDCR write up for unauthorized possession of a controlled substance. On October 2, 2016, Defendant Stohl held a hearing with a pre-determined bias and belief of guilt and found Plaintiff guilty in violation of his due process rights.

On November 30, 2016, Defendant Ibbs authored an allegedly false CDCR write up for possession of a weapon. On January 16, 2017, Defendant Livingston held a hearing with a predetermined bias and belief of Plaintiff's guilt and found Plaintiff guilty in violation of his due process rights.

Plaintiff asserts that Defendants Thomas and Stohl retaliated against Plaintiff by filing/adjudicating a false write up against him for exercising his right to file and maintain lawsuits, staff complaints and 602s against prison officials.

On February 1, 2017, Defendants Soares and Wadkins authored an allegedly false CDCR write up for refusing to accept assigned housing and delaying a PO. Plaintiff asserts that he never refused the assigned housing. Rather, a few minutes later, he was placed in a cell with another inmate. Defendant Wadkins assured Plaintiff that he would not be issued a write up, but Defendant Wadkins lied to protect Defendant Soares. On February 8, 2017, Defendant Livingston held a hearing with a predetermined bias and belief about Plaintiff's guilt and found Plaintiff guilty in violation of his due process rights.

Plaintiff alleges that Defendants Soares, Wadkins and Livingston retaliated against him by filing/adjudicating false write ups against him for exercising his right to file and maintain

1    lawsuits, staff complaints and 602s against prison officials. Plaintiff further alleges that these

2    actions did not serve to advance any legitimate penological interests or correctional goals.

3         On July 27, 2017, Defendant Sanchez authored an allegedly false CDCR write up for

4    delaying an order-refusal to remove back window covers. Plaintiff claims that at no time were the

5    back windows covered. Defendant Sanchez reportedly had a direct, clear view of Plaintiff's entire

6    cell. On August 1, 2017, Defendant Ibbs held a hearing with a predetermined bias and belief of

7    guilt, finding Plaintiff guilty in violation of his due process rights.

8         On October 4, 2017, Defendant Sanchez authored another allegedly false CDCR write up

9    for delaying an order—refusal to remove back window covers. Plaintiff claims that at no time

10   was his back window covered. Defendant Sanchez reportedly had a direct and clear view of the

11   entire inside cell. On October 8, 2017, Defendant Ibbs held a hearing with a predetermined bias

12   and belief of guilt and found Plaintiff guilty in violation of his due process rights.

13        Plaintiff alleges that Defendant Ibbs and Sanchez retaliated against Plaintiff by

14   filing/adjudicating allegedly false CDCR write ups against Plaintiff for exercising his right to file

15   and maintain lawsuits, staff complaints and 602s against prison officials. These actions allegedly

16   did not serve to advance any legitimate penological interests or correctional goals.

17        On November 12, 2017, Defendants Roque and Stohl authored an allegedly false CDCR

18   write up for fermentation or distillation of materials in a manner consistent with the production of

19   alcohol or alcohol paraphernalia. On December 3, 2017, Defendant Livingston held a hearing

20   with a predetermined bias and belief of guilt and found Plaintiff guilty in violation of his due

21   process rights.

22        Plaintiff alleges that Defendants Stohl, Roque and Livingston authorized/adjudicated a

23   false CDCR write ups for Plaintiff's exercise of his rights file and maintain lawsuits, staff

24   complaints and 602s against prison officials. These actions allegedly did not serve to advance any

25   legitimate penological interests or correctional goals.

26        On November 17, 2017, Defendant Lefner allegedly authored a false CDCR write up for

27   delaying a peace officer in the performance of duties. Plaintiff contends that at no time did he

28   delay any programs. He had both inmates and guards refute Defendant Lefner's false claim, but

8

1    Defendant Stohl still found Plaintiff guilty of an unrelated offense.

2         On the same day, as a result of Defendant Lefner's alleged retaliation, she had five of her

3    co-workers—Defendants Arreazola, Clegg, Garcia, Mehenez (Jimenez) and Helmuth—harass

4    Plaintiff while he was standing in front of his cell waiting to go inside. Defendants became

5    aggressive for no reason and commanded Plaintiff to turn around and cuff up. Plaintiff asked why

6    he was being cuffed up when he was waiting for the cell door to open to go inside.

7         Defendants screamed their commands again. Plaintiff was cuffed up and escorted to the

8    program office by Defendants Arreazola, Lefner, Clegg, Garcia, Helmuth and Menhenez.

9    Plaintiff was placed in a holding cage and stripped naked for no reason. Plaintiff was forced to

10   open his mouth, stick out his tongue, squat, open up his butt cheeks wide apart while Defendant

11   Arreazola shined his flashlight into Plaintiff's rectum. Plaintiff also was forced to lift up his penis

12   and scrotum and Defendants shined a flashlight under them. Plaintiff alleges that at no time was

13   he a danger to himself or others nor did he pose a risk of harm to the institution.

14        Plaintiff contends that his cell was then searched and ransacked by Defendants Lefner,

15   Arreazola, Garcia, Clegg, Helmuth and Menhenez. Defendants left Plaintiff in the holding cage

16   for four hours or more while they searched his cell. When Plaintiff was finally returned to his cell,

17   all his personal property was strewn over the floor and dumped out of shelves and cabinets.

18   Plaintiff alleges that the search of his body, cell and personal property was done in retaliation

19   with no legitimate penological interest or goal other than to punish and humiliate him.

20        On December 14, 2017, Defendant Stohl held a hearing with a predetermined bias and

21   belief of guilt and found Plaintiff guilty in violation of his due process rights.

22        Plaintiff alleges that Defendants Stohl, Lefner, Clegg, Arreazola, Garcia, Helmuth and

23   Menhenez retaliated against Plaintiff for exercising his rights by filing/adjudicating false CDCR

24   write ups and unlawful search and seizures. Plaintiff further alleges that Defendants' actions did

25   not advance any legitimate correctional goals.

26        Also, on December 14, 2017, Defendant Stohl held another hearing for a separate write up

27   that was reissued and reheard by Defendant Stohl for possession of a deadly weapon dating back

28   to November 3, 2016. Defendant Stohl allegedly denied Plaintiff his right to call a witness,

Michael Cattrell, who had exculpatory testimony. Plaintiff asserts that Defendant Stohl allegedly had a predetermined bias and belief of guilt and found Plaintiff guilty in violation of his due process rights. Plaintiff also asserts that Defendants Stohl and Ibbs retaliated against him by filing/adjudicating a false write up for exercising his rights to file and maintain lawsuits, staff complaints and 602s against prison officials. Plaintiff contends that Defendants' actions did not advance any legitimate correctional goals.

On December 12, 2018, Defendant Ibbs authored an allegedly false CDCR write up for possession of a cellular phone. Plaintiff asserts that at no time did he possess a phone nor was any phone found in his possession or common area. Defendant Ibbs allegedly found the phone inside Plaintiff's cellmate's personal TV located on his cellmate's assigned bed. Yet, as an allegedly common practice, Defendant Ibbs targeted Plaintiff with a false write up for possession of another person's cellphone. On December 19, 2018, Defendant Livingston held a hearing with a predetermined bias and belief of guilt and found Plaintiff guilty in violation of his due process rights.

Plaintiff contends that Defendants Ibbs and Livingston retaliated against him by filing/adjudicating a false write up for exercising his rights to file and maintain lawsuits, staff complaints and 602s against prison officials. Plaintiff further contends that Defendants' actions did not advance any legitimate correctional goals.

On January 14, 2018, as an accumulation of the allegedly retaliatory acts, Plaintiff was placed in the hole by Defendants Livingston and CSATF. Defendants approached Plaintiff's cell in the morning, cuffed him up and escorted him to the hole. All of his personal property was placed in the direct control of defendants. Defendants allegedly destroyed or intentionally misplaced/lost his property.

On January 16, 2018, Plaintiff was released from the hole as it was determined that he should have not been placed there in the first place. Plaintiff believes that Defendant Sanchez placed a bogus call to the institution claiming anonymously that Plaintiff had safety concerns. Plaintiff contends that this was done out of retaliation and malice in order to have Plaintiff removed from her building. When Plaintiff requested copies of the records of the phone call

10

number and area code, CSATF and CDCR denied Plaintiff's request. Plaintiff also requested an official internal affairs investigation, but he was allegedly stonewalled by CDCR and CSATF prison officials.

Plaintiff asserts that in the midst of these issues, his confiscated personal property was never returned or addressed by prison officials. Plaintiff filed a 602 grievance, which was addressed by Defendant Ibbs. Plaintiff claims that, in retaliation, Defendant Ibbs twisted CDCR policy to prevent Plaintiff from having his personal property and legal books returned. In the process, Defendant Ibbs allegedly destroyed $2,000 worth of legal books.

Plaintiff further asserts that CDCR allowed CSATF and Defendants Ibbs, Stohl and Livingston to enforce an unconstitutional policy that denied Plaintiff outside exercise yard time for four months based upon a CDCR sanction called loss of privileges. Once Plaintiff served four months of yard denial, CDCR and CSATF reportedly added an additional sanction based on the same false write ups and placed Plaintiff on a more severe disciplinary sanction called "C" over "C" and added four more months of loss of privileges, including loss of outside yard exercise time for a total of eight months. (ECF No. 1 at 22.) Plaintiff contends that CDCR and CSATF's custom, practice and policy of sanctioning Plaintiff twice for the same write ups is unconstitutional and violates both state and federal constitutions, denies due process and creates conditions rising to the level of cruel and unusual punishment.

Plaintiff purports to bring the following causes of action: (1) unlawful search and seizure in violation of the Fourth and Fourteenth Amendments against Defendants CDCR, CSATF, Lefner, Clegg, Garcia, Paulo, Arreazola, Helmuth and Menhendez; (2) retaliation in violation of the First and Fourteenth Amendments against Defendants CDCR, CSATF, Lefner, Sanchez, Ibbs, Livingston, Stohl, Soares, Wadkins, Roque and Thomas; (3) deliberate indifference to serious medical needs and cruel and unusual punishment (conditions of confinement) in violation of the Eighth and Fourteenth Amendments against Defendants CDCR and CSATF; (4) deliberate indifference to serious medical needs in violation of the Eighth and Fourteenth Amendments against Defendants CDCR and CSATF; (5) deliberate indifference to serious medical needs in violation of the Eighth and Fourteenth Amendments and in violation of the Americans with

1  Disabilities Act against Defendants CDCR, CSP-Corcoran, CSATF, and Reasonable

2  Accommodation Panel board members; (6) retaliation in violation of the First, Eighth and

3  Fourteenth Amendments against Defendants Ibbs and Paulo for confiscation of Plaintiff's

4  property; (7) falsification of his medical status in violation of the Eighth and Fourteenth

5  Amendments against Defendants CDCR, CSP-Corcoran and CSATF; (8) denial of Due Process

6  under the Fifth and Fourteenth Amendments against Defendants CDCR, CSATF, Stohl,

7  Livingston and Ibbs; and (9) negligent and intentional infliction of emotional distress. As relief,

8  Plaintiff seeks declaratory and injunctive relief, along with compensatory and punitive damages.

9       **C.**    **Discussion**

10       Plaintiff's complaint fails to comply with Federal Rules of Civil Procedure 8, 18 and 20.

11       **1.**    **Federal Rule of Civil Procedure 8**

12       Pursuant to Federal Rule of Civil Procedure 8, a complaint must contain "a short and plain

13  statement of the claim showing that the pleader is entitled to relief[.]"  Fed. R. Civ. P. 8(a)(2).

14  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause

15  of action, supported by mere conclusory statements, do not suffice."  Iqbal, 556 U.S. at 678

16  (citation omitted).  Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a

17  claim to relief that is plausible on its face.'"  Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S.

18  at 570).  While factual allegations are accepted as true, legal conclusions are not.  Id.; see also

19  Twombly, 550 U.S. at 556–57.

20       Plaintiff's complaint is not a short and plain statement of his claims. Plaintiff's complaint

21  improperly reads like a laundry list of events that have occurred while he has been housed at

22  CSATF and CSP-Corcoran. Plaintiff's complaint also improperly lumps certain defendants

23  together or merely recite the elements of a claim without supporting factual allegations. Plaintiff's

24  complaint does not include factual allegations identifying what happened, when it happened, and

25  who was involved. Fed. R. Civ. P. 8.  Further, as discussed below, Plaintiff has failed to limit his

26  claims to those properly joined in a single action.

27  ///

28  ///

### 2.    Federal Rules of Civil Procedure 18 and 20

Plaintiff may not bring unrelated claims against unrelated parties in a single action.  Fed. R. Civ. P. 18(a), 20(a)(2); <u>Owens v. Hinsley</u>, 635 F.3d 950, 952 (7th Cir. 2011); <u>George v. Smith</u>, 507 F.3d 605, 607 (7th Cir. 2007).  Plaintiff may bring a claim against multiple defendants so long as (1) the claim arises out of the same transaction or occurrence, or series of transactions and occurrences, and (2) there are commons questions of law or fact.  Fed. R. Civ. P. 20(a)(2); <u>Coughlin v. Rogers</u>, 130 F.3d 1348, 1351 (9th Cir. 1997).  The "same transaction" requirement refers to similarity in the factual background of a claim.  <u>Id.</u> at 1349.  Only if the defendants are properly joined under Rule 20(a) will the Court review the other claims to determine if they may be joined under Rule 18(a), which permits the joinder of multiple claims against the same party.

As a basic matter, Plaintiff's complaint may not include a laundry list of every alleged incident, event or occurrence while he was housed at both CSP-Corcoran and CSATF.  His complaint may not include unrelated claims against defendants at separate facilities involving separate events.  Plaintiff also may not include unrelated claims against defendants at the same facility involving separate, unrelated events.

### 3.    Eleventh Amendment Immunity

Plaintiff is attempting to sue defendants for monetary damages in their official and individual capacities.  "Suits against state officials in their official capacity . . . should be treated as suits against the State."  <u>Hafer v. Melo</u>, 502 U.S. 21, 25 (1991); <u>Holley v. Cal. Dep't of Corr.</u>, 599 F.3d 1108, 1111 (9th Cir. 2010) (treating prisoner's suit against state officials in their official capacities as a suit against the state of California).  An official capacity suit "represent[s] only another way of pleading an action against an entity of which an officer is an agent."  <u>Kentucky v. Graham</u>, 473 U.S. 159, 165 (1985) (citation omitted).  Such a suit "is not a suit against the official personally, for the real party in interest is the entity."  <u>Id.</u> at 166 (emphasis in original).

"The Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and state officials acting in their official capacities."  <u>Aholelei v. Dep't of Public Safety</u>, 488 F.3d 1144, 1147 (9th Cir. 2007).  Indeed, the Eleventh Amendment prohibits federal courts from hearing a Section 1983 lawsuit in which damages or injunctive relief is sought against

13

a state, its agencies (such as CDCR) or individual prisons, absent "a waiver by the state or a valid congressional override . . . ."  Dittman v. California, 191 F.3d 1020, 1025 (9th Cir. 1999).  "The Eleventh Amendment bars suits which seek either damages or injunctive relief against a state, 'an arm of the state,' its instrumentalities, or its agencies."  See Fireman's Fund Ins. Co. v. City of Lodi, Cal., 302 F.3d 928, 957 n.28 (9th Cir. 2002) (internal quotation and citations omitted), cert. denied, 538 U.S. 961 (2003).  "The State of California has not waived its Eleventh Amendment immunity with respect to claims brought under § 1983 in federal court . . . ."  Dittman, 191 F.3d at 1025–26 (citing Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 241 (1985)); see also Brown v. Cal. Dep't. of Corrs., 554 F.3d 747, 752 (9th Cir. 2009) (finding California Department of Corrections and California Board of Prison Terms entitled to Eleventh Amendment immunity).

Therefore, Plaintiff cannot pursue claims for damages or injunctive relief against the State, CDCR, CSP-Corcoran or CSATF in this action. Plaintiff's claim for monetary damages against the named defendants in their official capacities also are barred by the Eleventh Amendment.

### 4.      Linkage Requirement

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of [state law] ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution ... shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  The statute plainly requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by Plaintiff.  See Monell v. Dep't of Soc. Servs., 436 U.S. 658; Rizzo v. Goode, 423 U.S. 362 (1976).  The Ninth Circuit has held that "[a] person 'subjects another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made."  Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Here, Plaintiff's complaint improperly lumps together certain defendants in his claims.

///

14

1

### 5.      ADA

2          The Americans with Disabilities Act provides, "no qualified individual with a disability

3   shall, by reason of such disability, be excluded from participation in or be denied the benefits of

4   the services, programs, or activities of a public entity, or be subjected to discrimination by any

5   such entity."  42 U.S.C. § 12132.  The ADA defines "qualified individual with a disability" as "an

6   individual with a disability who, with or without reasonable modifications to rules, policies, or

7   practices, the removal of architectural, communication, or transportation barriers, or the provision

8   of auxiliary aids and services, meets the essential eligibility requirements for the receipt of

9   services or the participation in programs or activities provided by a public entity."  Id. § 12131(2).

10   The Supreme Court has held that "public entity" includes state prisons.  United States v. Georgia,

11   546 U.S. 151, 154 (2006) (citation omitted).

12          Plaintiff does not state a viable claim under the ADA.  He alleges that defendants at CSP-

13   Corcoran and CSATF, on multiple and various occasions, denied him adequate accommodations,

14   but he does not allege facts that show he was excluded from participation in, or denied the

15   benefits of, any service or programs offered by the prison because of his disability, or that he was

16   subjected to any type of discrimination by reason of his disability.

17          Although he suggests that CSP-Corcoran defendants denied him law library access, the

18   relevant allegations are conclusory and concern denial of writing assistance.  He does not suggest

19   that he was wholly prevented from using the law library on any occasion.  Additionally, to the

20   extent Plaintiff sues the defendants in their individual capacities, he may not "bring an action

21   under 42 U.S.C. § 1983 against a State official in her individual capacity to vindicate rights

22   created by Title II of the ADA."  Vinson v. Thomas, 288 F.3d 1145, 1156 (9th Cir. 2002).

23          ### 6.      First Amendment – Retaliation

24          Allegations of retaliation against a prisoner's First Amendment rights to speech or to

25   petition the government may support a section 1983 claim.  Silva v. Di Vittorio, 658 F.3d 1090,

26   1104 (9th Cir. 2011); Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985); see also

27   Valandingham v. Bojorquez, 866 F. 2d 1135 (9th Cir. 1989); Pratt v. Rowland, 65 F.3d 802, 807

28   (9th Cir. 1995).  "Within the prison context, a viable claim of First Amendment retaliation entails

1   five basic elements: (1) An assertion that a state actor took some adverse action against an inmate

2   (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's

3   exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate

4   correctional goal." <u>Rhodes v. Robinson</u>, 408 F.3d 559, 567-68 (9th Cir. 2005); <u>accord</u> <u>Watison v.</u>

5   <u>Carter</u>, 668 F.3d 1108, 1114–15 (9th Cir. 2012); <u>Silva</u>, 658 at 1104; <u>Brodheim v. Cry</u>, 584 F.3d

6   1262, 1269 (9th Cir. 2009).

7          As currently pled, Plaintiff's complaint improperly violates the joinder requirements of

8   Federal Rules of Civil Procedure 18 and 20.  To the extent Plaintiff is attempting to allege

9   multiple instances of asserted retaliation, the Court declines to separately screen those allegations

10   at this stage of the proceedings.  Of importance, the Court notes that the bulk of Plaintiff's

11   allegations concerning instances of alleged retaliation are conclusory in nature, involving a

12   recitation of the elements of the claim and lacking sufficient factual matter to state a plausible

13   claim for relief.  Critically, Plaintiff's allegations do not demonstrate that actions taken by

14   defendants—whether at CSP-Corcoran or CSATF—in any way chilled the exercise of his First

15   Amendment rights.

16                    **7.      Fourth Amendment – Search and Seizure**

17                          a.      <u>Search and Seizure of Property</u>

18          Plaintiff does not have a right to be free from the search and seizure of his personal

19   property.  <u>Hudson v. Palmer</u>, 468 U.S. 517, 536 (1984); <u>Taylor v. Knapp</u>, 871 F.2d 803, 806 (9th

20   Cir. 1989).  "Lawful incarceration necessarily entails limitations upon many of the rights enjoyed

21   by ordinary citizens. An inmate's Fourth Amendment rights are among the rights subject to

22   curtailment. In particular, the fourth amendment does not protect an inmate from the seizure and

23   destruction of his property."  <u>Taylor</u>, 871 F.2d at 806 (internal citations omitted).

24                          b.      <u>Search of Plaintiff</u>

25          Plaintiff appears to complain about a strip search on one occasion.  The Ninth Circuit has

26   held that prisoners retain rights to bodily privacy under the Fourth Amendment.  <u>Bull v. City &</u>

27   <u>Cty. of San Francisco</u>, 595 F.3d 964, 974–75 (9th Cir. 2010).  However, strip searches do not per

28   se violate prisoners' Fourth Amendment rights.  <u>See id.</u> at 974.  Rather, a strip search is

unreasonable under the Fourth Amendment where it is "'excessive, vindictive, harassing, or unrelated to any legitimate penological interest.'"  Thompson v. Souza, 111 F.3d 694, 700 (9th Cir. 1997) (quoting Michenfelder v. Sumner, 860 F.2d 328, 332 (9th Cir. 1988)).  "Whether a search is reasonable under the Fourth Amendment requires a case-by-case 'balancing of the need for the particular search against the invasion of personal rights that the search entails . . . .' " Byrd v. Maricopa Cty. Sheriff's Dep't, 629 F.3d 1135, 1141 (9th Cir. 2011) (quoting Bell v. Wolfish, 441 U.S. 520, 559 (1979)).  In reviewing such a claim, the Court must consider " 'the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place which it is conducted.' " Thompson, 111 F.3d at 700 (quoting Bell, supra).

At the pleading stage, Plaintiff's allegations suggest that he may be able to state a cognizable claim that the strip search by Defendants Arreazola, Lefner, Clegg, Garcia, Helmuth and Menhenez was unreasonable in violation of the Fourth Amendment because it lacked justification.  However, this claim is not properly joined pursuant to Federal Rule of Civil Procedure 18.

### 8.    Eighth Amendment – Medical Care

A prisoner's claim of inadequate medical care does not constitute cruel and unusual punishment in violation of the Eighth Amendment unless the mistreatment rises to the level of "deliberate indifference to serious medical needs." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)).  The two-part test for deliberate indifference requires Plaintiff to show (1) "a 'serious medical need' by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." Jett, 439 F.3d at 1096.

A defendant does not act in a deliberately indifferent manner unless the defendant "knows of and disregards an excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 837 (1994).  "Deliberate indifference is a high legal standard," Simmons v. Navajo Cty. Ariz., 609 F.3d 1011, 1019 (9th Cir. 2010); Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004), and

1  is shown where there was "a purposeful act or failure to respond to a prisoner's pain or possible

2  medical need" and the indifference caused harm.  Jett, 439 F.3d at 1096.

3        In applying this standard, the Ninth Circuit has held that before it can be said that a

4  prisoner's civil rights have been abridged, "the indifference to his medical needs must be

5  substantial.  Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this

6  cause of action."  Broughton v. Cutter Labs., 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle,

7  429 U.S. at 105–06).  "[A] complaint that a physician has been negligent in diagnosing or treating

8  a medical condition does not state a valid claim of medical mistreatment under the Eighth

9  Amendment. Medical malpractice does not become a constitutional violation merely because the

10  victim is a prisoner."  Estelle, 429 U.S. at 106; see also Anderson v. Cty. of Kern, 45 F.3d 1310,

11  1316 (9th Cir. 1995).  Even gross negligence is insufficient to establish deliberate indifference to

12  serious medical needs.  See Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990).

13        Further, a "difference of opinion between a physician and the prisoner—or between

14  medical professionals—concerning what medical care is appropriate does not amount to

15  deliberate indifference."  Snow v. McDaniel, 681 F.3d 978, 987 (9th Cir. 2012) (citing Sanchez v.

16  Vild, 891 F.2d 240, 242 (9th Cir. 1989)), overruled in part on other grounds, Peralta v. Dillard,

17  744 F.3d 1076, 1082–83 (9th Cir. 2014); Wilhelm v. Rotman, 680 F.3d 1113, 1122–23 (9th Cir.

18  2012) (citing Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1986)).  Rather, Plaintiff "must

19  show that the course of treatment the doctors chose was medically unacceptable under the

20  circumstances and that the defendants chose this course in conscious disregard of an excessive

21  risk to [his] health."  Snow, 681 F.3d at 988 (citing Jackson, 90 F.3d at 332) (internal quotation

22  marks omitted).

23        As pled, Plaintiff's complaint fails to state a cognizable claim for inadequate medical

24  treatment.  The Court cannot ascertain whether Plaintiff intends to bring claims under the Eighth

25  Amendment related to his request for accommodations . Further, as discussed above, any such

26  claims involving defendants at different facilities and discrete events are not properly joined in

27  this action.  Plaintiff does allege that CSATF failed to provide medical treatment after slipping

28  and falling in his cell.  However, Plaintiff does not link any defendant to these allegations.

1

**9.      Eighth Amendment – Conditions of Confinement**

2        The Eighth Amendment protects prisoners from inhumane methods of punishment and

3   from inhumane conditions of confinement.  Farmer, 511 U.S. 825; Morgan v. Morgensen, 465

4   F.3d 1041, 1045 (9th Cir. 2006).  Thus, no matter where they are housed, prison officials have a

5   duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical

6   care, and personal safety.  Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000) (quotation marks

7   and citations omitted).  To establish a violation of the Eighth Amendment, the prisoner must

8   "show that the officials acted with deliberate indifference . . ."  Labatad v. Corrs. Corp. of Amer.,

9   714 F.3d 1155, 1160 (9th Cir. 2013) (citing Gibson v. Cty. of Washoe, 290 F.3d 1175, 1187 (9th

10  Cir. 2002)).

11       The deliberate indifference standard involves both an objective and a subjective prong.

12  First, the alleged deprivation must be, in objective terms, "sufficiently serious."  Farmer, 511 U.S.

13  at 834.  Second, subjectively, the prison official must "know of and disregard an excessive risk to

14  inmate health or safety."  Id. at 837; Anderson v. Cty. of Kern, 45 F.3d 1310, 1313 (9th Cir.

15  1995).

16       Objectively, extreme deprivations are required to make out a conditions-of-confinement

17  claim and only those deprivations denying the minimal civilized measure of life's necessities are

18  sufficiently grave to form the basis of an Eighth Amendment violation.  Hudson v. McMillian,

19  503 U.S. 1, 9 (1992).  Although the Constitution " 'does not mandate comfortable prisons,' "

20  Wilson v. Seiter, 501 U.S. 294, 298 (1991), "inmates are entitled to reasonably adequate

21  sanitation, personal hygiene, and laundry privileges, particularly over a lengthy course of time,"

22  Howard v. Adkison, 887 F.2d 134, 137 (8th Cir. 1989).

23       a.      Cell Conditions

24       Plaintiff may be able to state a cognizable claim concerning the conditions of his cell at

25  CSATF relating to flooding, asbestos and fecal matter.  However, as currently pled, Plaintiff's

26  general, conclusory allegations are not sufficient.  Plaintiff's complaint fails to adequately link

27  any defendant to this claim or otherwise demonstrate how long these conditions may or may not

28  have persisted.

19

1

               b.      Slip and Fall

2           Insofar as Plaintiff is complaining about slipping and falling in a puddle, under the Eighth

3      Amendment, "slippery prison floors . . . do not state even an arguable claim for cruel and unusual

4      punishment." LeMaire v. Maass, 12 F.3d 1444, 1457 (9th Cir. 1993) (quotation omitted).

5      Indeed, federal courts have repeatedly rejected Eighth Amendment slip and fall claims. See

6      Oubichon v. Carey, 2017 WL 2162940, at *8 (E.D. Cal. May 17, 2017) (citing Coleman v.

7      Sweetin, 745 F.3d 756, 764 & n.7 (5th Cir. 2014) (collecting cases); see also Collier v. Garcia,

8      2018 WL 659014, at *2 (N.D. Cal. Jan. 31, 2018) (dismissing § 1983 claim alleging prisoner

9      slipped and fell in his cell in a puddle of water from a leaking chase); Aaronian v. Fresno Cty.

10    Jail, 2010 WL 5232969, at *2–*3 (E.D. Cal. 2010) (dismissing § 1983 claim that plumbing leak

11    caused puddle, resulting in plaintiff's slip and fall, as not cognizable); Gilman v. Woodford, 2006

12    WL 1049739 (E.D. Cal. April 20, 2006) (granting qualified immunity to defendants when

13    prisoner slipped and fell in puddle of water resulting from leaky roof known to defendants), aff'd

14    by 2008 WL 686740 (9th Cir. March 12, 2008) (unpublished memorandum disposition).

15    Therefore, in order to state a cognizable claim for relief, there must be a confluence of

16    exacerbating conditions such that the slippery floor posed a serious, unavoidable threat to

17    plaintiff's safety. See Frost v. Agnos, 152 F.3d 1124, 1129 (9th Cir. 1998) ("[s]lippery floors

18    without protective measures could create a sufficient danger to warrant relief" when an inmate

19    alleges facts that exacerbate the danger resulting from such conditions; inmate using crutches had

20    repeatedly fallen and injured himself on slippery shower floors); Osolinski v. Kane, 92 F.3d 934,

21    938 (9th Cir. 1996) (finding prisoner failed to plead any exacerbating conditions which rendered

22    him unable to provide for his own safety).

23          Plaintiff has not pled any conditions that rendered him unable to provide for his own

24    safety in the sense that they precluded him from avoiding the puddle or rendered him unable to

25    perceive the slippery conditions. Osolinski, 92 F.3d at 938; Mancinas v. Brown, 2018 WL

26    1109673, at *2 (E.D. Cal. Mar. 1, 2018) (dismissing prisoner's § 1983 claim that known, ongoing

27    leak caused puddle, resulting in slip and fall). Thus, Plaintiff fails to state a cognizable Eighth

28    Amendment conditions of confinement claim against any of the defendants arising out of his slip

1  and fall.

2                c.      Outdoor Exercise

3         Plaintiff contends that he was denied outdoor exercise for an eight-month period.  An

4  Eighth Amendment violation may occur when prisoners are "confined to continuous and long-

5  term segregation" without any outdoor exercise.  Keenan v. Hall, 83 F.3d 1083, 1089–90 (9th Cir.

6  1996) (denial of outdoor exercise for six months while in segregation sufficient to proceed to

7  trial).  A prisoner's right to outdoor exercise is not "absolute and indefeasible" and may be

8  restricted under certain circumstances.  See Norwood v. Vance, 591 F.3d 1062, 1068–70 (9th Cir.

9  2010) (as amended) (upholding temporary denial of outdoor exercise for periods of more than

10 four months to curb pattern of inmate-on-inmate attacks); see also Allen v. Sakai, 40 F.3d 1001,

11 1004 (9th Cir. 1994) (requiring outdoor exercise unless "inclement weather, unusual

12 circumstances, or disciplinary needs" make it impossible), amended by 48 F.3d 1082 (9th Cir.

13 1995).

14        At the pleading stage, Plaintiff's allegations may be sufficient to support a claim for denial

15 of outdoor exercise time.  However, this claim is not properly joined pursuant to Federal Rule of

16 Civil Procedure 18.

17       **10.**     **Fourteenth Amendment – Disciplinary Proceedings**

18        Plaintiff alleges that he repeatedly was falsely charged with rules violations.  Plaintiff has

19 no freestanding due process "right to be free from false accusations."  Garrott v. Glebe, 600 Fed.

20 App'x 540, 545 (9th Cir. 2015) (citations omitted); see Sprouse v. Babcock, 870 F.2d 450, 452

21 (8th Cir. 1989) (explaining that claims based on false charges, "standing alone, do not state

22 constitutional claims" (citation omitted)); Shepherd v. Nueschmid, No. 2:19-cv-0084 JAM DB P,

23 2019 WL 1229773, at *7 (E.D. Cal. Mar. 15, 2019) (same).  "Filing false allegations by itself

24 does not violate a prisoner's constitutional rights so long as (1) the prisoner receives procedural

25 due process before there is a deprivation of liberty as a result of false allegations; and (2) the false

26 allegations are not in retaliation for the prisoner exercising constitutional rights."  Carroll v. Scott,

27 No. 1:20-cv-00086 EPG (PC), 2020 WL 4192258, at *4 (E.D. Cal. July 21, 2020) (collecting

28 cases and citing Hernandez v. Johnston, 833 F.2d 1316 (9th Cir. 1987)).

Although Plaintiff alleges that the false charges against him were made in retaliation for protected activity, Plaintiff's conclusory statements are not sufficient.  Plaintiff's complaint must include factual allegations, not mere conclusions, demonstrating that the false allegations were made in retaliation for exercising his constitutional rights.

Plaintiff also repeatedly challenges, as a violation of his due process rights, a myriad of disciplinary hearings in which he was found guilty following allegedly false charges.  "Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply."  Wolff v. McDonnell, 418 U.S. 539, 556 (1974) (citation omitted).  To comply with the requirements of due process, prison officials must provide a prisoner facing disciplinary charges: (1) written notice of the charges before the disciplinary hearing; (2) at least 24 hours to allow the prisoner to prepare for the hearing; (3) the right to call witnesses and present documentary evidence, unless doing so would be unduly hazardous to institutional safety or correctional goals; (4) assistance from another prisoner or staff person if the issues presented are complex or the prisoner is illiterate; and (5) a written statement by the fact finders detailing the evidence relied upon and the reasons for the disciplinary action.  See id. at 564–70.

Generally, Plaintiff's complaint fails to adequately allege that the disciplinary proceedings against him lacked written notice of the charges, 24 hours to prepare, the right to call witnesses and present documentary evidence, receive assistance if the issues were complex or receive a written statement by the fact finders.  The Court acknowledges Plaintiff's allegations that on December 14, 2017, Defendant Stohl allegedly denied Plaintiff his right to call a witness, Michael Cattrell, at a hearing for possession of a deadly weapon dating back to November 3, 2016.  However, this claim is not properly joined pursuant to Federal Rule of Civil Procedure 18.

### 11.     Fourteenth Amendment – Classification

Although unclear, it appears that Plaintiff is challenging his medical classification.  Prisoners have no federally protected liberty interest in their classification status.  See Hernandez v. Johnston, 833 F.2d 1316, 1318 (9th Cir. 1987).  No federal due process right is implicated by a prison's classification decisions.  See Meachum v. Fano, 427 U.S. 215, 224–25, (1976).

1          **12.     Fourteenth Amendment – Property**

2          Prisoners have a protected interest in their personal property.  Hansen v. May, 502 F.2d

3   728, 730 (9th Cir. 1974).  An authorized, intentional deprivation of property is actionable under

4   the Due Process Clause.  See Hudson v. Palmer, 468 U.S. 517, 532 n.13 (1984) (citing Logan v.

5   Zimmerman Brush Co., 455 U.S. 422, 435–36 (1982)); Quick v. Jones, 754 F.2d 1521, 1524 (9th

6   Cir. 1985).  However, "an unauthorized intentional deprivation of property by a state employee

7   does not constitute a violation of the procedural requirements of the Due Process Clause of the

8   Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available."

9   Hudson, 468 U.S. at 533.

10         Here, Plaintiff's complaint concerning his property is based on allegations that certain

11  defendants engaged in unauthorized, intentional deprivations.  Due process is therefore satisfied if

12  there is a meaningful post-deprivation remedy available to him.  Id.  Plaintiff has an adequate

13  post-deprivation remedy available under California law.  Barnett v. Centoni, 31 F.3d 813, 816–17

14  (9th Cir. 1994) (citing Cal. Gov't Code §§ 81–895).  Therefore, Plaintiff fails to allege a

15  cognizable due process claim based on the deprivation, loss or destruction of his property against

16  any of the named defendants.

17         **13.     State Law Claims**

18         Plaintiff purports to bring a state law claim for negligent and/or intentional infliction of

19  emotional distress.  The Government Claims Act requires exhaustion of Plaintiff's state law tort

20  claims with the California Victim Compensation and Government Claims Board, and Plaintiff is

21  required to specifically allege compliance in his complaint.  Shirk v. Vista Unified Sch. Dist., 42

22  Cal. 4th 201, 208–09 (Cal. 2007); State v. Superior Court of Kings Cty. (Bodde), 32 Cal. 4th

23  1234, 1239 (Cal. 2004); Mabe v. San Bernardino Cty. Dep't of Pub. Soc. Servs., 237 F.3d 1101,

24  1111 (9th Cir. 2001); Mangold v. Cal. Pub. Utils. Comm'n, 67 F.3d 1470, 1477 (9th Cir. 1995);

25  Karim– Panahi v. Los Angeles Police Dep't, 839 F.2d 621, 627 (9th Cir. 1988).  Plaintiff has

26  failed to allege compliance with the Government Claims Act.

27  ///

28  ///

1    **III.**    **Failure to Prosecute and Failure to Obey a Court Order**

2         **A.**    **Legal Standard**

3         Local Rule 110 provides that "[f]ailure . . . of a party to comply with these Rules or with

4    any order of the Court may be grounds for imposition by the Court of any and all sanctions . . .

5    within the inherent power of the Court."  District courts have the inherent power to control their

6    dockets and "[i]n the exercise of that power they may impose sanctions including, where

7    appropriate, . . . dismissal."  Thompson v. Hous. Auth., 782 F.2d 829, 831 (9th Cir. 1986).  A

8    court may dismiss an action, with prejudice, based on a party's failure to prosecute an action,

9    failure to obey a court order, or failure to comply with local rules.  See, e.g., Ghazali v. Moran, 46

10   F.3d 52, 53–54 (9th Cir. 1995) (dismissal for noncompliance with local rule); Ferdik v. Bonzelet,

11   963 F.2d 1258, 1260–61 (9th Cir. 1992) (dismissal for failure to comply with an order requiring

12   amendment of complaint); Malone v. U.S. Postal Serv., 833 F.2d 128, 130–33 (9th Cir. 1987)

13   (dismissal for failure to comply with court order).

14        In determining whether to dismiss an action, the Court must consider several factors:

15   (1) the public's interest in expeditious resolution of litigation; (2) the Court's need to manage its

16   docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of

17   cases on their merits; and (5) the availability of less drastic sanctions.  Henderson v. Duncan, 779

18   F.2d 1421, 1423 (9th Cir. 1986); Carey v. King, 856 F.2d 1439, 1440 (9th Cir. 1988).

19        **B.**    **Discussion**

20        Here, Plaintiff's first amended complaint is overdue, and he has failed to comply with the

21   Court's orders.  The Court cannot effectively manage its docket if Plaintiff ceases litigating his

22   case.  Thus, the Court finds that both the first and second factors weigh in favor of dismissal.

23        The third factor, risk of prejudice to defendant, also weighs in favor of dismissal, since a

24   presumption of injury arises from the occurrence of unreasonable delay in prosecuting an action.

25   Anderson v. Air W., 542 F.2d 522, 524 (9th Cir. 1976).  The fourth factor usually weighs against

26   dismissal because public policy favors disposition on the merits.  Pagtalunan v. Galaza, 291 F.3d

27   639, 643 (9th Cir. 2002).  However, "this factor lends little support to a party whose

28   responsibility it is to move a case toward disposition on the merits but whose conduct impedes

24

1  progress in that direction," which is the case here.  In re Phenylpropanolamine (PPA) Products

2  Liability Litigation, 460 F.3d 1217, 1228 (9th Cir. 2006) (citation omitted).

3          Finally, the Court's warning to a party that failure to obey the court's order will result in

4  dismissal satisfies the "considerations of the alternatives" requirement.  Ferdik, 963 F.2d at 1262;

5  Malone, 833 at 132–33; Henderson, 779 F.2d at 1424.  The Court's August 14, 2020 screening

6  order expressly warned Plaintiff that his failure to file an amended complaint would result in a

7  recommendation of dismissal of this action, with prejudice, for failure to obey a court order and

8  for failure to state a claim.  (ECF No. 11, p. 24.)  Thus, Plaintiff had adequate warning that

9  dismissal could result from his noncompliance.

10          Additionally, at this stage in the proceedings there is little available to the Court that

11  would constitute a satisfactory lesser sanction while protecting the Court from further

12  unnecessary expenditure of its scarce resources.  Plaintiff is proceeding in forma pauperis in this

13  action, making monetary sanctions of little use, and the preclusion of evidence or witnesses is

14  likely to have no effect given that Plaintiff has ceased litigating his case.

15  **IV.  Conclusion and Recommendation**

16          Accordingly, the Court HEREBY ORDERS the Clerk of the Court to randomly assign a

17  district judge to this action.

18          Further, the Court finds that dismissal is the appropriate sanction and HEREBY

19  RECOMMENDS that this action be dismissed, with prejudice, for failure to state a claim

20  pursuant to 28 U.S.C. § 1915A, for failure to obey a Court order, and for Plaintiff's failure to

21  prosecute this action.

22          These Findings and Recommendation will be submitted to the United States District Judge

23  assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within **fourteen**

24  **(14) days** after being served with these Findings and Recommendation, Plaintiff may file written

25  objections with the Court.  The document should be captioned "Objections to Magistrate Judge's

26  Findings and Recommendation."  Plaintiff is advised that failure to file objections within the

27  specified time may result in the waiver of the "right to challenge the magistrate's factual

28  findings" on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v.

25

1    <u>Sullivan</u>, 923 F.2d 1391, 1394 (9th Cir. 1991)).

2

3    IT IS SO ORDERED.

4        Dated:   **April 6, 2021**                        /s/ *Barbara A. McAuliffe*

5                                                    UNITED STATES MAGISTRATE JUDGE