1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

10

11 | GEORGE E. JACOBS, IV,

12 |         Plaintiff,

13 |    v.

14 | CDCR, *et al.*,

15 |         Defendants.

Case No.  1:20-cv-00547-ADA-BAM (PC)

FINDINGS AND RECOMMENDATIONS TO DISMISS ACTION, WITH PREJUDICE, FOR FAILURE TO STATE A CLAIM, FAILURE TO OBEY COURT ORDER, AND FAILURE TO PROSECUTE

(ECF No. 42)

**FOURTEEN (14) DAY DEADLINE**

17

18 **I.**    **Background**

19       Plaintiff George E. Jacobs, IV ("Plaintiff") is a state prisoner proceeding *pro se* and *in*

20 *forma pauperis* in this civil rights action under 42 U.S.C. § 1983.  This matter was referred to a

21 United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.

22       On February 22, 2022, the Court screened the first amended complaint and granted

23 Plaintiff leave to file a second amended complaint or a notice of voluntary dismissal within thirty

24 (30) days.  (ECF No. 42.)  The Court expressly warned Plaintiff that the failure to comply with

25 the Court's order would result in a recommendation for dismissal of this action, with prejudice,

26 for failure to obey a court order and for failure to state a claim.  (*Id.* at 19.)  Following four

27 extensions of time, Plaintiff's second amended complaint or notice of voluntary dismissal were

28 due on or before September 28, 2022.  (ECF Nos. 44, 46, 48, 51.)  Plaintiff was warned in the

1   Court's August 11, 2022 order granting Plaintiff's fourth motion for extension of time that, given

2   the amount of time that had elapsed since the Court's screening order, Plaintiff's pattern of

3   requesting multiple extensions of time in response to the Court's orders,[1] and the length of the

4   extension requested, that order would be the final extension of time granted for this deadline.

5   (ECF No. 51, p. 3.)

6          Nevertheless, on September 16, 2022, Plaintiff filed a motion for a fifth extension of time

7   to file his amended complaint.  (ECF No. 54.)  Based on the extensive discussion provided in the

8   August 11, 2022 order, as well as inconsistencies in the factual allegations presented in Plaintiff's

9   motion, the Court found no basis for reconsidering the prior order and denied the request for a

10  fifth extension of time.  (ECF No. 55.)

11         The September 28, 2022 deadline has expired, and Plaintiff has failed to file a second

12  amended complaint or otherwise communicate with the Court.

13  **II.     Failure to State a Claim**

14         **A.     Screening Requirement**

15         The Court is required to screen complaints brought by prisoners seeking relief against a

16  governmental entity and/or against an officer or employee of a governmental entity.  28 U.S.C.

17  § 1915A(a).  Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous

18  or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary

19  relief from a defendant who is immune from such relief.  28 U.S.C. §§ 1915A(b).

20         A complaint must contain "a short and plain statement of the claim showing that the

21  pleader is entitled to relief . . . ."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not

---

[1] In particular, the Court noted the following procedural history:

> [T]he Court screened Plaintiff's initial complaint on August 14, 2020.  (ECF No. 11.)  Thereafter, the Court granted Plaintiff five extensions of time to file a first amended complaint before recommending, seven months later, that this action be dismissed due to Plaintiff's failure to prosecute.  (ECF No. 23.)  Plaintiff was then granted three extensions of time to file his objections to those findings and recommendations, finally filing his objections after two months.  (ECF No. 30.)  The case was later closed and then re-opened in response to Plaintiff's motion for reconsideration, and Plaintiff was permitted to file a first amended complaint.  (ECF No. 41.)  The first amended complaint was screened nearly six months ago, and Plaintiff is now requesting a fourth extension of the deadline to file a second amended complaint.

(ECF No. 51, pp. 2–3.)

1    required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere

2    conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*citing Bell*

3    *Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  While a plaintiff's allegations are taken as

4    true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*,

5    572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

6         To survive screening, Plaintiff's claims must be facially plausible, which requires

7    sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable

8    for the misconduct alleged.  *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss v. U.S. Secret*

9    *Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).  The sheer possibility that a defendant acted unlawfully

10   is not sufficient, and mere consistency with liability falls short of satisfying the plausibility

11   standard.  *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss*, 572 F.3d at 969.

12        **B.     Plaintiff's Allegations**

13        Plaintiff is currently housed at Centinela State Prison in Imperial, California.  The events

14   in the first amended complaint are alleged to have occurred at the California Substance Abuse

15   Treatment Facility ("CSATF") in Corcoran, California.  Plaintiff names the following defendants

16   in both their individual and official capacities: (1) CDCR; (2) CSATF-Corcoran; (3) P.

17   Brightwell, CSATF Reasonable Accommodation ("RAP") staff member; (4) J. Zamora, CSATF

18   RAP staff member; (5) A. Enemoh, CSATF RAP staff member; (6) T. Ordonez, CSATF RAP

19   staff member; (7) V. Hernandez, CSATF RAP staff member; and (8) S. Whiting, CSATF RAP

20   staff member.  Plaintiff alleges as follows:

21        On October 1, 2016, on C-yard at CSATF, CSATF staff forced Plaintiff into a cell (C1-

22   113 upper) with a cellmate who was confined to a wheelchair and assigned to the lower bunk.  As

23   a result of CDCR and CSATF personnel's failure to properly classify Plaintiff's medical

24   condition/disability (upper body extremity disability), Plaintiff was housed with a paralyzed right

25   arm and wrists on the top bunk.

26        At the time of his housing on the top/upper bunk, Plaintiff had documentation stating that

27   he could not be housed on the upper bunk, due to his upper extremity disability.

28   ///

3

Plaintiff could not refuse the housing assignment due to CDCR's and CSATF's policy enforced to punish prisoners who refuse housing assignments. As a result of being forced to accept their housing assignment via "CDCR" Policy, Plaintiff went to sleep on the top bunk in C1-113 upper and fell off the bunk trying to climb down out of the bunk in the dark to use the restroom.

Plaintiff was seriously injured, his left hand and wrist was seriously damaged, Plaintiff was sent to the hospital for emergent care/treatment. As a result of the fall, Plaintiff was disabled in both his arms and hands, rendering Plaintiff incapable of participating in daily life activities.

CDCR and CSATF rehoused Plaintiff back on the GP mainline and in a cell with another prisoner, instead of rehousing him in the medical ward for disabled prisoners, where he could have sought adequate medical care and protection from predators.

On October 18, 2016, an American Disability Act ("ADA") reasonable accommodations request was filed with CDCR and CSATF on Plaintiff's behalf, based on his upper body extremities disability and the non-use of both his left hand and wrist, and right arm, hand, and wrist. At this time he was disabled in both wrists and hands.

CDCR and CSATF's healthcare services denied Plaintiff's "ADA" request. However, in their denial response they acknowledged Plaintiff had been improperly housed in C1-113 upper, due to his medical classification. But also stated, "it was beyond the medical information provided."

Again on January 31, 2019 CDCR and CSATF failed to properly house Plaintiff, as a result he was again seriously injured. On this day, Plaintiff slipped and fell inside his cell C6-101, in a puddle of polluted rainwater that flooded the cell during the night while he was sleeping. As a result of his fall, he injured his left rib cage, suffered an open gash on his left back, and suffered continuous back pain and rib pain that affected his breathing.

CCDR and CSATF were placed on numerous notices that the cell (C6-101) flooded with polluted rainwater seeping from the floor and cracks in the corner of the cell's walls. Defendants refused to acknowledge the deteriorating conditions of CSATF cells. Plaintiff addressed this issue in his "ADA" request for reasonable accommodations, which were denied. CDCR and

4

1   CSATF were well aware of the conditions of leaking contaminated water flooding their cells.

2           The pre-existing conditions of cell C6-101 prior to Plaintiff falling in the puddle of

3   contaminated water had already caused him injuries.  Plaintiff suffered sores inside of his nose,

4   blisters, rashes, and scabs on his body and skin.  Medical treatment was needed for his ailments.

5   Ailments created by decades of water contamination, mold inside the walls, on the bunks, and

6   inside the air ducts.  Combined with decades of mixed cross contaminants; bat droppings, rat

7   droppings, and bird fecal inside the air ducts ventilation system and cracks in the cell walls.  The

8   rainwater which floods the cell also comes through the roof's air ventilation system and runs

9   down through the air vents directly into the prison cells and dayroom area, visiting room area, and

10   facility kitchens.  Yet CDCR and CSATF officials still housed Plaintiff and other prisoners

11   knowingly in harmful, dangerous and deplorable prison cell conditions, as well as subjecting his

12   family and children to these same conditions during visiting hours.

13           On September 15, 2019, Plaintiff filed another "ADA" request based on his disability,

14   further injury to his person and the prison conditions he was housed to live in.  CDCR CSATF

15   RAP board members – P. Brightwell, J. Zamora, A. Enemoh, T. Ordonez, V. Hernandez, and S.

16   Whiting – denied Plaintiff his right to reasonable accommodations for his personal safety.

17           CDCR and CSATF healthcare provided Plaintiff with no reasonable accommodations.  To

18   this day, Plaintiff is still fighting for ADA shower access, writing assistant, and single cell

19   accommodations.  Plaintiff has had to defend for himself all these years by paying other prisoners

20   commissary to help him write letters and fill out forms.  At times, Plaintiff has to struggle to write

21   for himself with his untrained left hand.  Plaintiff also has to pay for his physical protection from

22   "predators," because he can no longer defend himself from physical harm/attacks.  Violence on a

23   maximum security facility is a daily occurrence.  CDCR-CSATF has refused to acknowledge

24   Plaintiff's disability and has left him to program in a maximum security (180 design) facility,

25   subjecting him to daily violence and harm.

26           Policies set in place by CDCR and CSATF allowed Plaintiff to be denied ADA reasonable

27   accommodations in an unconstitutional manner.

28   ///

During all times relevant herein, Plaintiff was an active participant in the CCCMS mental health level of care, receiving medical treatment for mental conditions caused by conditions Plaintiff was exposed to at the hand and control of CDCR and CSATF.

Plaintiff purports to bring the following causes of action:

Count One

Deliberate indifference to serious medical needs in violation of the Eighth and Fourteenth Amendments.  Defendants created a policy which denied Plaintiff's medical needs to be housed on a lower bunk.  Defendants' policy set in motion the events which led to Plaintiff's serious medical needs after he fell from the top bunk bed and seriously injured his one good arm (left arm) due to his fall and Defendants' failure to honor his lower bunk medical chrono.  Defendants willfully and knowingly housed Plaintiff in a harmful and dangerous living condition by forcing him to accept an upper bunk assignment, which was dangerous and harmful to his pre-existing serious medical condition – "Radial Nerve Palsy – Neuropathy," due to a crushed Humerous Bone Fracture.  Plaintiff alleges that the living conditions Defendants' subjected him to seriously injured his left wrist and fingers, requiring emergency treatment resulting in additional wrist brace and pain medication.

Count Two

Deliberate indifference to serious medical needs in violation of the Eighth and Fourteenth Amendments.  Defendants refused to provide Plaintiff with emergency medical care to treat a gash on his lower back rib section which was actively bleeding, after falling in the cell in contaminated rain leakage water.  Defendants assigned Plaintiff to live in a cell that was hazardous to human life, contained accumulated mildew, mold, asbestos, rat and bat feces inside the walls, cracks, ventilation system and running rainwater causing the cell to pool water on the cell floor, under bunks, running out of the air vents, and corner cell walls.  These conditions caused Plaintiff aggravating respiratory problems, nose sores and blisters, aggravated sinus problems, skin rashes, sores, back problems, and bruised ribs.

///

///

6

Count Three

Deliberate indifference to serious medical needs in violation of the ADA Act Title II and III, and the Eighth and Fourteenth Amendments.  Defendants denied and continuously refused Plaintiff ADA status and reasonable accommodations for his upper extremity disability. Defendants' common practice and policy of denying Plaintiff's 1824 reasonable accommodations request created a harmful and unreasonable risk to Plaintiff's health and safety, causing Plaintiff to suffer physical harm and mental pain.  Defendants denied Plaintiff ADA status and reasonable accommodations, excluding him from participation in and/or denied him the benefits of programs, services, and activities of CDCR, subjecting Plaintiff to discrimination because of his disability.  Defendants denied and refused Plaintiff equal access to housing and programs in a manner that is safe and appropriate for his disability and consistent with the "mission" of CDCR Departmental Policy.  The denial and refusal of ADA status and reasonable accommodations subjected Plaintiff to undue hardships, serious injuries, discrimination, and denial of medical treatment.  It further subjected Plaintiff to harassment, embarrassment and retaliation, unsanitary living conditions, unsafe and dangerous housing assignments due to his vulnerability, and inability to protect himself from harm, such as physical assaults or falling off a bunk bed with no steps or ladders.

Count Four

Defendants violated Plaintiff's rights under the First, Eighth, and Fourteenth Amendments by falsifying Plaintiff's medical status, resulting in denial of high risk medical care, safe housing, and subjection to cruel and unusual unsanitary conditions.  Defendants conspired among each other to falsify Plaintiff's medical high risk status in order to prevent him from being housed in a high risk medical facility, where he would have received high risk medical treatment and housing. Defendants conspired to prevent Plaintiff from receiving the benefits of high risk medical treatment and housing to teach him a lesson for filing ADA medical complaints and maintaining his lawsuits against CDCR prison employees.  Plaintiff alleges that each defendant harbored animus towards him for exposing their misconduct against him to high ranking government officials.

1   Count Five

2       Intentional negligent infliction of emotional distress.  Plaintiff alleges that due to the acts

3   or omissions set forth in the complaint, he has suffered and continues to suffer severe mental and

4   emotional pain, sustained numerous physical and emotional injuries, including but not limited to:

5   severe back pain, arm, wrist, and fingers nerve damage pain, humiliation, dizziness, rashes,

6   blisters, open sores and indignities.  Plaintiff did and will in the future continue to incur doctor,

7   medical, pharmaceutical, and incident expenses.

8   Count Six

9       Plaintiff alleges that he is entitled to attorney fees and costs of suit.

10  Relief

11      Plaintiff demands the following relief: (a) declaring Plaintiff's right to be free from

12  intimidating and unlawful activities designed to coerce Plaintiff into refraining from pursuing his

13  lawsuits and complaints against CDCR prison officials; (b) permanently enjoining defendants

14  from intimidating and unlawful activities designed to coerce Plaintiff in refraining from pursuing

15  his lawsuits and "staff misconduct complaints" against CDCR prison officials; (c) order

16  defendants to provide Plaintiff with adequate medical care, including meaningful ADA

17  reasonable accommodations and restoring his "High Risk Medical" status; (d) enjoining any and

18  all retaliation against Plaintiff for filing and maintaining lawsuits and 602 complaints; (e) order

19  defendants to medically release Plaintiff from CDCR custody due to Plaintiff's medical disability

20  and defendants' failure and/or inability to provide him with adequate medical care and safe

21  housing; (f) appoint expert(s) to represent Plaintiff, or in the alternative appoint independent

22  medical expert to settle any disputes; (g) injunction for adequate meaningful medical care

23  surrounding Plaintiff's disability and injuries; (h) compensatory damages in the sum of $300,000;

24  (i) punitive damages in the sum of $600,000; (j) special damages in the sum of $150,000;

25  (k) Plaintiff's cost of suit; (l) demand for jury trial on all issues herein; and (m) any additional

26  relief the Court deems just and equitable.

27  ///

28  ///

8

1

**C.     Discussion**

Plaintiff's complaint fails to comply with Federal Rules of Civil Procedure 8, 18, and 20, and fails to state a cognizable claim upon which relief may be granted.

### 1.     Federal Rule of Civil Procedure 8

Pursuant to Rule 8, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citation omitted).  Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  While factual allegations are accepted as true, legal conclusions are not.  *Id.*; *see also Twombly*, 550 U.S. at 556–57; *Moss*, 572 F.3d at 969.

Here, Plaintiff's complaint is neither short nor plain.  Many of Plaintiff's allegations are conclusory and simply recite the elements of the various causes of action without supporting factual allegations.  General assertions regarding the failure of unspecified Defendants to provide Plaintiff with proper medical care, or to provide him with a certain medical or disability classification, are not sufficient.

### 2.     Federal Rules of Civil Procedure 18 and 20

Plaintiff may not bring unrelated claims against unrelated parties in a single action.  Fed. R. Civ. P. 18(a), 20(a)(2); *Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011); *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007).  Plaintiff may bring a claim against multiple defendants so long as (1) the claim arises out of the same transaction or occurrence, or series of transactions and occurrences, and (2) there are commons questions of law or fact. Fed. R. Civ. P. 20(a)(2); *Coughlin v. Rogers*, 130 F.3d 1348, 1351 (9th Cir. 1997).  The "same transaction" requirement refers to similarity in the factual background of a claim.  *Id.* at 1349.  Only if the defendants are properly joined under Rule 20(a) will the Court review the other claims to determine if they may be joined under Rule 18(a), which permits the joinder of multiple claims against the same party. ///

Plaintiff may not raise separate, unrelated events in a single action, even if they occurred at the same institution.  For instance, Plaintiff may not, in a single case, assert a claim related to an improper upper bunk assignment leading to his left arm injury while simultaneously asserting a conditions of confinement claim regarding pooling water on the floor of his cell.  Unrelated claims involving multiple defendants belong in different suits.

### 3.     Eleventh Amendment Immunity

Plaintiff is attempting to sue defendants for monetary damages in their official and individual capacities.  "Suits against state officials in their official capacity . . . should be treated as suits against the State."  *Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Holley v. Cal. Dep't of Corr.*, 599 F.3d 1108, 1111 (9th Cir. 2010) (treating prisoner's suit against state officials in their official capacities as a suit against the state of California).  An official capacity suit "represent[s] only another way of pleading an action against an entity of which an officer is an agent."  *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (citation omitted).  Such a suit "is not a suit against the official personally, for the real party in interest is the entity."  *Id.* at 166 (emphasis in original).

"The Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and state officials acting in their official capacities."  *Aholelei v. Dep't of Public Safety*, 488 F.3d 1144, 1147 (9th Cir. 2007).  Indeed, the Eleventh Amendment prohibits federal courts from hearing a Section 1983 lawsuit in which damages or injunctive relief is sought against a state, its agencies (such as CDCR) or individual prisons, absent "a waiver by the state or a valid congressional override. . . ."  *Dittman v. California*, 191 F.3d 1020, 1025 (9th Cir. 1999).  "The Eleventh Amendment bars suits which seek either damages or injunctive relief against a state, 'an arm of the state,' its instrumentalities, or its agencies."  *See Fireman's Fund Ins. Co. v. City of Lodi, Cal.*, 302 F.3d 928, 957 n.28 (9th Cir. 2002) (internal quotation and citations omitted), cert. denied, 538 U.S. 961 (2003).  "The State of California has not waived its Eleventh Amendment immunity with respect to claims brought under § 1983 in federal court. . . ."  *Dittman*, 191 F.3d at 1025–26 (citing *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 241 (1985)); *see also Brown v. Cal. Dep't. of Corrs.*, 554 F.3d 747, 752 (9th Cir. 2009) (finding California Department of Corrections and California Board of Prison Terms entitled to Eleventh Amendment immunity).

Therefore, Plaintiff cannot pursue claims for damages or injunctive relief against the State, CDCR, or CSATF in this action.  Plaintiff's claim for monetary damages against the named defendants in their official capacities also are barred by the Eleventh Amendment.

### 4.    Linkage Requirement

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  The statute plainly requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by Plaintiff.  *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978); *Rizzo v. Goode*, 423 U.S. 362 (1976).  The Ninth Circuit has held that "[a] person 'subjects another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made."  *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

Here, Plaintiff's complaint improperly lumps together nearly all defendants in his claims. Nearly all of his factual allegations are against Defendants CDCR and CSATF, who are immune from damages and injunctive relief, or against "Defendants" generally.  The only factual allegations in the complaint against the other named defendants CSATF RAP members Brightwell, Zamora, Enemoh, Ordonez, Hernandez, and Whiting, state only that they denied Plaintiff his right to reasonable accommodations for his personal safety.

### 5.    ADA

The Americans with Disabilities Act provides, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.  The ADA defines "qualified individual with a disability" as "an individual with a disability who, with or without reasonable modifications to rules, policies, or

practices, the removal of architectural, communication, or transportation barriers, or the provision

of auxiliary aids and services, meets the essential eligibility requirements for the receipt of

services or the participation in programs or activities provided by a public entity." *Id.* § 12131(2).

The Supreme Court has held that "public entity" includes state prisons. *United States v. Georgia*,

546 U.S. 151, 154 (2006) (citation omitted).

Plaintiff does not state a viable claim under the ADA. He alleges that defendants CDCR

and CSATF denied him adequate accommodations, but he does not allege facts that show he was

excluded from participation in, or denied the benefits of, any service or programs offered by the

prison because of his disability, or that he was subjected to any type of discrimination by reason

of his disability. Further, plaintiff's allegations of inadequate medical care do not state a claim

under the ADA. *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996) ("The ADA does not create

a remedy for medical malpractice."); *see also Simmons*, 609 F.3d at 1022 (Inadequate or negligent

medical treatment alone does not constitute an unlawful failure to accommodate under the ADA

or the Rehabilitation Act.).

Additionally, to the extent Plaintiff sues the defendants in their individual capacities, he

may not "bring an action under 42 U.S.C. § 1983 against a State official in her individual capacity

to vindicate rights created by Title II of the ADA." *Vinson v. Thomas*, 288 F.3d 1145, 1156 (9th

Cir. 2002).

### 6.    First Amendment – Retaliation

Allegations of retaliation against a prisoner's First Amendment rights to speech or to

petition the government may support a section 1983 claim. *Silva v. Di Vittorio*, 658 F.3d 1090,

1104 (9th Cir. 2011); *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985); *see also Valandingham

v. Bojorquez*, 866 F. 2d 1135 (9th Cir. 1989); *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995).

"Within the prison context, a viable claim of First Amendment retaliation entails five basic

elements: (1) An assertion that a state actor took some adverse action against an inmate

(2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's

exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate

correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005); *accord Watison v.*

1    *Carter*, 668 F.3d 1108, 1114-15 (9th Cir. 2012); *Silva*, 658 at 1104; *Brodheim v. Cry*, 584 F.3d

2    1262, 1269 (9th Cir. 2009).

3       Plaintiff fails to state a claim regarding retaliation.  Although Plaintiff alleges that

4    Defendants conspired to prevent Plaintiff from receiving the benefits of high risk medical

5    treatment and housing "to teach him a lesson for filing ADA medical complaints and maintaining

6    lawsuits against CDCR prison employees," these allegations fail to link any specific Defendant to

7    these claims.  Critically, Plaintiff's allegations do not demonstrate that actions taken by any

8    defendants in any way chilled the exercise of his First Amendment rights.

9          **7.**      **Eighth Amendment – Medical Care**

10      A prisoner's claim of inadequate medical care does not constitute cruel and unusual

11    punishment in violation of the Eighth Amendment unless the mistreatment rises to the level of

12    "deliberate indifference to serious medical needs."  *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir.

13    2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).  The two-part test for deliberate

14    indifference requires Plaintiff to show (1) "a 'serious medical need' by demonstrating that failure

15    to treat a prisoner's condition could result in further significant injury or the 'unnecessary and

16    wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately

17    indifferent."  *Jett*, 439 F.3d at 1096.

18      A defendant does not act in a deliberately indifferent manner unless the defendant "knows

19    of and disregards an excessive risk to inmate health or safety."  *Farmer v. Brennan*, 511 U.S. 825,

20    837 (1994).  "Deliberate indifference is a high legal standard," *Simmons v. Navajo Cty. Ariz.*, 609

21    F.3d 1011, 1019 (9th Cir. 2010); *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004), and is

22    shown where there was "a purposeful act or failure to respond to a prisoner's pain or possible

23    medical need" and the indifference caused harm.  *Jett*, 439 F.3d at 1096.

24      In applying this standard, the Ninth Circuit has held that before it can be said that a

25    prisoner's civil rights have been abridged, "the indifference to his medical needs must be

26    substantial.  Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this

27    cause of action." *Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980) (citing *Estelle*, 429

28    U.S. at 105–06).  "[A] complaint that a physician has been negligent in diagnosing or treating a

medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.  Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106; *see also Anderson v. Cty. of Kern*, 45 F.3d 1310, 1316 (9th Cir. 1995).  Even gross negligence is insufficient to establish deliberate indifference to serious medical needs. *See Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990).

Further, a "difference of opinion between a physician and the prisoner—or between medical professionals—concerning what medical care is appropriate does not amount to deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 987 (9th Cir. 2012) (citing *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989)), overruled in part on other grounds, *Peralta v. Dillard*, 744 F.3d 1076, 1082–83 (9th Cir. 2014); *Wilhelm v. Rotman*, 680 F.3d 1113, 1122–23 (9th Cir. 2012) (citing *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1986)).  Rather, Plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances and that the defendants chose this course in conscious disregard of an excessive risk to [his] health." *Snow*, 681 F.3d at 988 (citing *Jackson*, 90 F.3d at 332) (internal quotation marks omitted).

As pled, Plaintiff's complaint fails to state a cognizable claim for inadequate medical treatment.  The Court cannot ascertain whether Plaintiff intends to bring claims under the Eighth Amendment related to his request for accommodations.  Plaintiff does allege that CSATF failed to provide medical treatment after slipping and falling in his cell.  However, Plaintiff does not link any defendant to these allegations.  In any amended complaint, Plaintiff must clearly and succinctly state what happened, when it happened, and who was involved in the alleged denial of his medical care in violation of the Eighth Amendment.  Further, Plaintiff's allegations should be limited to properly joined claims.

### 8.    Conditions of Confinement

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement.  *Farmer*, 511 U.S. 825; *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006).  Thus, no matter where they are housed, prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical

1    care, and personal safety.  *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000) (quotation marks

2    and citations omitted).  To establish a violation of the Eighth Amendment, the prisoner must

3    "show that the officials acted with deliberate indifference . . ."  *Labatad v. Corrs. Corp. of Amer.*,

4    714 F.3d 1155, 1160 (9th Cir. 2013) (citing *Gibson v. Cty. of Washoe*, 290 F.3d 1175, 1187 (9th

5    Cir. 2002)).

6           The deliberate indifference standard involves both an objective and a subjective prong.

7    First, the alleged deprivation must be, in objective terms, "sufficiently serious."  *Farmer* at 834.

8    Second, subjectively, the prison official must "know of and disregard an excessive risk to inmate

9    health or safety."  *Id.* at 837; *Anderson v. Cty. of Kern*, 45 F.3d 1310, 1313 (9th Cir. 1995).

10          Objectively, extreme deprivations are required to make out a conditions-of-confinement

11   claim and only those deprivations denying the minimal civilized measure of life's necessities are

12   sufficiently grave to form the basis of an Eighth Amendment violation.  *Hudson v. McMillian*,

13   503 U.S. 1, 9 (1992).  Although the Constitution " 'does not mandate comfortable prisons,' "

14   *Wilson v. Seiter*, 501 U.S. 294, 298 (1991), "inmates are entitled to reasonably adequate

15   sanitation, personal hygiene, and laundry privileges, particularly over a lengthy course of time,"

16   *Howard v. Adkison*, 887 F.2d 134, 137 (8th Cir. 1989).

17          Bunk Assignment

18          Plaintiff may be able to state a cognizable claim concerning the failure to assign him to a

19   lower bunk when he had a chrono for a lower bunk due to his upper extremity disability, which

20   resulted in him falling out of the upper bunk and injuring his left hand and wrist.  However, as

21   currently pled, Plaintiff's general, conclusory allegations are not sufficient.  Plaintiff's complaint

22   fails to adequately link any defendant to this claim.

23          Cell Conditions

24          Plaintiff may be able to state a cognizable claim concerning the conditions of his cell

25   relating to flooding, asbestos, and animal fecal matter.  However, as currently pled, Plaintiff's

26   general, conclusory allegations are not sufficient.  Plaintiff's complaint fails to adequately link

27   any defendant to this claim or otherwise demonstrate how long these conditions may or may not

28   have persisted.

1        Slip and Fall

2            Insofar as Plaintiff is complaining about slipping and falling in a puddle, under the Eighth

3    Amendment, "slippery prison floors . . . do not state even an arguable claim for cruel and unusual

4    punishment." *LeMaire v. Maass*, 12 F.3d 1444, 1457 (9th Cir. 1993) (quotation omitted).  Indeed,

5    federal courts have repeatedly rejected Eighth Amendment slip and fall claims.  *See Oubichon v.*

6    *Carey*, 2017 WL 2162940, at *8 (E.D. Cal. May 17, 2017) (citing *Coleman v. Sweetin*, 745 F.3d

7    756, 764 & n.7 (5th Cir. 2014) (collecting cases); *see also Collier v. Garcia*, 2018 WL 659014, at

8    *2 (N.D. Cal. Jan. 31, 2018) (dismissing § 1983 claim alleging prisoner slipped and fell in his cell

9    in a puddle of water from a leaking chase); *Aaronian v. Fresno Cty. Jail*, 2010 WL 5232969, at

10   *2–*3 (E.D. Cal. 2010) (dismissing § 1983 claim that plumbing leak caused puddle, resulting in

11   plaintiff's slip and fall, as not cognizable); *Gilman v. Woodford*, 2006 WL 1049739 (E.D. Cal.

12   April 20, 2006) (granting qualified immunity to defendants when prisoner slipped and fell in

13   puddle of water resulting from leaky roof known to defendants), aff'd by 2008 WL 686740 (9th

14   Cir. March 12, 2008) (unpublished memorandum disposition).  Therefore, in order to state a

15   cognizable claim for relief, there must be a confluence of exacerbating conditions such that the

16   slippery floor posed a serious, unavoidable threat to plaintiff's safety.  *See Frost v. Agnos*, 152

17   F.3d 1124, 1129 (9th Cir. 1998) ("[s]lippery floors without protective measures could create a

18   sufficient danger to warrant relief" when an inmate alleges facts that exacerbate the danger

19   resulting from such conditions; inmate using crutches had repeatedly fallen and injured himself on

20   slippery shower floors); *Osolinski v. Kane*, 92 F.3d 934, 938 (9th Cir. 1996) (finding prisoner

21   failed to plead any exacerbating conditions which rendered him unable to provide for his own

22   safety).

23            Plaintiff has not pled any conditions that rendered him unable to provide for his own

24   safety in the sense that they precluded him from avoiding the puddle or rendered him unable to

25   perceive the slippery conditions.  *Osolinski*, 92 F.3d at 938; *Mancinas v. Brown*, 2018 WL

26   1109673, at *2 (E.D. Cal. Mar. 1, 2018) (dismissing prisoner's § 1983 claim that known, ongoing

27   leak caused puddle, resulting in slip and fall).  In addition, Plaintiff has failed to link any

28   defendant to the leaking water in his cell.  Thus, Plaintiff fails to state a cognizable Eighth

16

Amendment conditions of confinement claim against any of the defendants arising out of his slip and fall.

### 9.      Eighth Amendment – Failure to Protect

Prison officials have a duty under the Eighth Amendment to protect prisoners from violence at the hands of other prisoners or others because being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society. *Farmer*, 511 U.S. at 833; *Clem v. Lomeli*, 566 F.3d 1177, 1181 (9th Cir.2009); *Hearns v. Terhune*, 413 F.3d 1036, 1040 (9th Cir. 2005).  However, prison officials are liable under the Eighth Amendment only if they demonstrate deliberate indifference to conditions posing a substantial risk of serious harm to an inmate; and it is well settled that deliberate indifference occurs when an official acted or failed to act despite his knowledge of a substantial risk of serious harm.  *Farmer*, 511 U.S. at 834, 841; *Clem*, 566 F.3d at 1181; *Hearns*, 413 F.3d at 1040.

Plaintiff's complaint does not state a cognizable claim for failure to protect.  Although Plaintiff alleges that his injuries to his hands left him unable to defend himself from attacks by other inmates, and the failure of prison officials to grant him "reasonable accommodations" in a medical facility left him vulnerable to such attacks, Plaintiff does not link these claims to any defendants.  Furthermore, there is no indication in the complaint that any defendant was aware that Plaintiff was at risk of serious harm at the hands of any other inmates.

### 10.      Fourteenth Amendment – Classification

Although unclear, it appears that Plaintiff is challenging his medical classification.  Prisoners have no federally protected liberty interest in their classification status.  *See Hernandez v. Johnston*, 833 F.2d 1316, 1318 (9th Cir. 1987).  No federal due process right is implicated by a prison's classification decisions.  *See Meachum v. Fano*, 427 U.S. 215, 224–25, (1976).

### 11.      Conspiracy

"Conspiracy is not itself a constitutional tort under § 1983.  It does not enlarge the nature of the claims asserted by the plaintiff, as there must always be an underlying constitutional violation.  Conspiracy may however, enlarge the pool of responsible defendants by demonstrating their causal connections to the violation; the fact of the conspiracy may make a party liable for the

17

1  unconstitutional actions of the party with whom he has conspired." *Lacey v. Maricopa Cty.*, 693

2  F.3d 896, 935 (9th Cir. 2012) (internal citations omitted).

3       To establish a cognizable claim for conspiracy under 42 U.S.C. § 1983, a plaintiff must

4  allege (1) the existence of an express or implied agreement among the defendants to deprive the

5  plaintiff of his constitutional rights, and (2) an actual deprivation of those rights resulting from

6  that agreement. *Avalos v. Baca*, 596 F.3d 583, 592 (9th Cir. 2010). To establish a conspiracy,

7  Plaintiff allege specific facts showing "an agreement or meeting of the minds to violate

8  constitutional rights. To be liable, each participant in the conspiracy need not know the exact

9  details of the plan, but each participant must at least share the common objective of the

10  conspiracy." *Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2002) (internal citations and quotation

11  marks omitted). The mere conclusory statement that defendants "conspired" together is not

12  sufficient to state a cognizable claim. *Woodrum v. Woodward Cty.*, 866 F.2d 1121, 1126 (9th Cir.

13  1989).

14       Here, the first amended complaint fails to state a claim for conspiracy. Plaintiff makes

15  general, omnibus allegations that the Defendants, in doing the myriad of acts alleged, were doing

16  so in the furtherance of some conspiracy. Plaintiff must plead the basic elements of a civil

17  conspiracy: an agreement and concerted action amongst the defendants in the furtherance of that

18  agreement, and that each defendant conspired to violate Plaintiff's constitutional rights. *See also*

19  *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1047 (9th Cir. 2008) (noting that a bare allegation of

20  a conspiracy is almost impossible to defend against where numerous individuals are concerned).

21              **12.    State Law Claims**

22       Plaintiff purports to bring a state law claim for negligent and/or intentional infliction of

23  emotional distress. The Government Claims Act requires exhaustion of Plaintiff's state law tort

24  claims with the California Victim Compensation and Government Claims Board, and Plaintiff is

25  required to specifically allege compliance in his complaint. *Shirk v. Vista Unified Sch. Dist.*, 42

26  Cal. 4th 201, 208–09 (Cal. 2007); *State v. Super. Ct. of Kings Cty. (Bodde)*, 32 Cal. 4th 1234,

27  1239 (Cal. 2004); *Mabe v. San Bernardino Cty. Dep't of Pub. Soc. Servs.*, 237 F.3d 1101, 1111

28  (9th Cir. 2001); *Mangold v. Cal. Pub. Utils. Comm'n*, 67 F.3d 1470, 1477 (9th Cir. 1995); *Karim–*

1  *Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 627 (9th Cir. 1988).  Plaintiff has failed to

2  allege compliance with the Government Claims Act.

3  **13.**    **Declaratory Relief**

4  To the extent Plaintiff's complaint seeks a declaratory judgment, it is unnecessary.  "A

5  declaratory judgment, like other forms of equitable relief, should be granted only as a matter of

6  judicial discretion, exercised in the public interest."  *Eccles v. Peoples Bank of Lakewood Village*,

7  333 U.S. 426, 431 (1948).  "Declaratory relief should be denied when it will neither serve a useful

8  purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and

9  afford relief from the uncertainty and controversy faced by the parties."  *United States v.*

10  *Washington*, 759 F.2d 1353, 1357 (9th Cir. 1985).  If this action reaches trial and the jury returns

11  a verdict in favor of Plaintiff, then that verdict will be a finding that Plaintiff's constitutional

12  rights were violated.  Accordingly, a declaration that any defendant violated Plaintiff's rights is

13  unnecessary.

14  **III.**    **Failure to Prosecute and Failure to Obey a Court Order**

15  **A.**    **Legal Standard**

16  Local Rule 110 provides that "[f]ailure . . . of a party to comply with these Rules or with

17  any order of the Court may be grounds for imposition by the Court of any and all sanctions . . .

18  within the inherent power of the Court."  District courts have the inherent power to control their

19  dockets and "[i]n the exercise of that power they may impose sanctions including, where

20  appropriate, . . . dismissal."  *Thompson v. Hous. Auth.*, 782 F.2d 829, 831 (9th Cir. 1986).  A

21  court may dismiss an action, with prejudice, based on a party's failure to prosecute an action,

22  failure to obey a court order, or failure to comply with local rules.  *See, e.g.*, *Ghazali v. Moran*, 46

23  F.3d 52, 53–54 (9th Cir. 1995) (dismissal for noncompliance with local rule); *Ferdik v. Bonzelet*,

24  963 F.2d 1258, 1260–61 (9th Cir. 1992) (dismissal for failure to comply with an order requiring

25  amendment of complaint); *Malone v. U.S. Postal Serv.*, 833 F.2d 128, 130–33 (9th Cir. 1987)

26  (dismissal for failure to comply with court order).

27  In determining whether to dismiss an action, the Court must consider several factors:

28  (1) the public's interest in expeditious resolution of litigation; (2) the Court's need to manage its

docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions.  *Henderson v. Duncan*, 779 F.2d 1421, 1423 (9th Cir. 1986); *Carey v. King*, 856 F.2d 1439, 1440 (9th Cir. 1988).

### B.    Discussion

Here, Plaintiff's second amended complaint is overdue, and he has failed to comply with the Court's order.  The Court cannot effectively manage its docket if Plaintiff ceases litigating his case.  Thus, the Court finds that both the first and second factors weigh in favor of dismissal.

The third factor, risk of prejudice to defendant, also weighs in favor of dismissal, since a presumption of injury arises from the occurrence of unreasonable delay in prosecuting an action. *Anderson v. Air W.*, 542 F.2d 522, 524 (9th Cir. 1976).  The fourth factor usually weighs against dismissal because public policy favors disposition on the merits.  *Pagtalunan v. Galaza*, 291 F.3d 639, 643 (9th Cir. 2002).  However, "this factor lends little support to a party whose responsibility it is to move a case toward disposition on the merits but whose conduct impedes progress in that direction," which is the case here.  *In re Phenylpropanolamine (PPA) Products Liability Litigation*, 460 F.3d 1217, 1228 (9th Cir. 2006) (citation omitted).

Finally, the Court's warning to a party that failure to obey the court's order will result in dismissal satisfies the "considerations of the alternatives" requirement.  *Ferdik*, 963 F.2d at 1262; *Malone*, 833 at 132–33; *Henderson*, 779 F.2d at 1424.  The Court's February 22, 2022 screening order expressly warned Plaintiff that his failure to file an amended complaint would result in a recommendation of dismissal of this action, with prejudice, for failure to obey a court order and for failure to state a claim.  (ECF No. 42, p. 10.)  In addition, Plaintiff was provided the same warning with each extension of the deadline to file a second amended complaint or notice of voluntary dismissal, (ECF Nos. 44, p. 3; 46, p. 3; 48, p. 3; 51, p. 4), and the Court's denial of Plaintiff's request for a fifth extension of time, (ECF No. 55, p. 3).  Thus, Plaintiff had adequate warning that dismissal could result from his noncompliance.

Finally, the Court notes that this case was originally filed on April 16, 2020, more than two and a half years ago, and has yet to progress beyond the screening of Plaintiff's first amended complaint.  This action was already dismissed once due to Plaintiff's delay in filing a first

amended complaint, and despite being provided a further opportunity to litigate his claims, Plaintiff continued to request multiple lengthy extensions of time in response to any deadline set by the Court, unnecessarily delaying the resolution of this case.

At this stage in the proceedings, there is little available to the Court that would constitute a satisfactory lesser sanction while protecting the Court from further unnecessary expenditure of its scarce resources. Plaintiff is proceeding *in forma pauperis* in this action, making monetary sanctions of little use, and the preclusion of evidence or witnesses is likely to have no effect given that Plaintiff has refused to take any action to continue litigating this case.

**IV.**   **Conclusion and Recommendation**

Accordingly, the Court finds that dismissal is the appropriate sanction and HEREBY RECOMMENDS that this action be dismissed, with prejudice, for failure to state a claim pursuant to 28 U.S.C. § 1915A, for failure to obey a Court order, and for Plaintiff's failure to prosecute this action.

These Findings and Recommendation will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **fourteen (14) days** after being served with these Findings and Recommendation, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Plaintiff is advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **October 12, 2022**          /s/ *Barbara A. McAuliffe*
                                        UNITED STATES MAGISTRATE JUDGE